JUD|GE COFER
delivered the opinion of the court.
The appellants are commission merchants, doing business in the city of Chicago, and members of the Chicago Board of Trade. They brought this suit against Krauth, Ferguson & Co., pork-packers and provision dealers of Louisville, to recover a large balance alleged to be due for money paid out and advanced on account of dealings in meats and lard on the Chicago Board of Trade, in which the appellants acted as brokers for Krauth, Ferguson & Co.
In their original petition the appellants alleged that “they *717 advanced and paid out for Krauth, Ferguson & Co., at their special instance and request, various sums of money, and advanced and loaned to Krauth, Ferguson & Co. various sums of money, in the amounts and at the dates, and in the manner set forth ” in an exhibit filed with the petition, amounting to the sum of $171,760.13, on which the sum of $114,818.80 had been paid, leaving a balance of $56,941.33 due and unpaid, for which they prayed judgment.
In an amended petition they alleged that at the times in the bill of particulars mentioned, Krauth, Ferguson & Co. requested them “to purchase for the said defendants, as such factors and brokers, the merchandise, consisting of meats and lard, in said original petition and bill of particulars set forth within and upon the board of trade, under and in accordance with the rules and customs of said board of trade; and the plaintiffs,.under and in pursuance of said requests and orders of the said defendants, did make the several purchases of merchandise for the said defendants upon and within the said board of trade, and under and in accordance with its rules and customs, all of which the said defendants well knew.
“ The rules and regulations of said board of trade required that the said purchases should be made in the'name of the plaintiffs (the said defendants not' being members of said board), and not in the name of said defendants, and required the plaintiffs to become liable to those from whom such goods were purchased, for the value and price of the same, all of which was well known to said defendants; and defendants requested the plaintiffs to so purchase and become liable for them, and plaintiffs, under and in pursuance of said requests, and in accordance with said usage and rules and custom did so make said purchases in their own name, and did so become liable for and on behalf of said defendants to the sellers of said merchandise, for the price thereof.”
The plaintiffs went on to allege that according to the rules, *718 customs, and usages of trade, and the agreement of the parties, Krauth, Ferguson & Co. were bound and agreed to deposit money or securities as margin to protect the plaintiffs against loss in case of a decline in the market, and that it was further the custom, rule, and usage of trade and agreement of the parties that if margins were not kept good, then they (the plaintiffs) were authorized to sell the property purchased for the defendants at the market-price, or make such settlements with those from whom they had purchased the same as would be best for the interest of the plaintiffs and defendants;- that they became entitled to and demanded margins which were not furnished, and thereupon “the plaintiffs, under and in accordance with the said rules and customs of said board of trade, and the usages of trade, and in accordance with said agreement and authority from said defendants, the said defendants being then insolvent, sold the said merchandise for which they were so liable for said defendants, the said sales being made by the plaintiffs at the highest market price which could be obtained therefor,” etc., and that, crediting the defendants with the proceeds of sales and settlements, there was a loss of $56,943.33, which they had paid or settled.
Among other defenses relied upon Krauth, Ferguson & Co. specifically denied, as to each item of the alleged purchases and sales, that such purchase or sale had been made, or that the appellants had paid out on account of such purchases the sums claimed, or any other sum.
On hearing, the appellants’ petition was dismissed, and they have appealed.
Although several defenses were set up and relied upon, and were presented in the argument of counsel, we do not deem it necessary to state or discuss more than a single one of them:
Did the appellants, in fact, make for, and on account of Krauth, Ferguson & Co., the purchases they claim to have .made?
*719 The appellants claim to have acted as brokers in' all these transactions. They also claim not only that they were directed to buy and sell on the board of trade, but that they actually, did so. The answer denies that they either bought or sold as they alleged they did, on the board of trade or elsewhere. The money they claim to have paid oút they claim was paid to supply the deficiency in the proceeds of sales to meet the cost of purchases. This claim can only be sustained by proof of purchases and sales and losses thereon, and all these being denied, the burden is on the appellants to prove their case.
It is the legal duty of a broker to buy and sell for, and not to or from his principal. He is an agent, and when directed to buy or sell for account of his principal his duty is to buy from or sell to third persons. This is not only a rule of reason and of law, but it is the rule the appellants, by their pleadings, prescribe for themselves. They were to buy and sell on the board of trade for Krauth, Ferguson & Co., and claim they did so.
The only witness introduced to make the required proof was the managing partner of appellants’ house, H. P. Dar-, lington.
In his deposition he went over the account item by item, and stated that it was correct in detail and in the aggregate; that his firm made the several purchases of merchandise with .the results therein stated, and advanced and paid out money for Krauth, Ferguson & Co. on account, of said purchases and sales as shown on the account filed with the petition.
He stated generally more than once that all the alleged purchases and sales were actually made in the regular course of trade. But he did not give the names of more than one or. two persons or firms from whom purchases were made or to whom sales were made, and he nowhere stated that the purchases were actually made of third persons.
He was asked if, in each of the instances in which it was *720 claimed that purchases were made, he went on the market and made contracts of purchase with third persons. He answered as follows:
“As to making contracts; while it is-usual with us to make contracts as far as possible, contracts are not made in every instance for this reason: I may have received an order from a house in Boston, to buy for them one thousand barrels of pork at one o’clock in the day, and I buy it at $20 a barrel, for instance. At four o’clock on the same day I receive an order from a party in Louisville to sell one thousand barrels of pork, and the market has then advanced to $20.50, and the party of whom I bought at one o’clock is in the market buying, and I sell him one thousand barrels of pork; no contract would pass, because it would not be necessary; but in making up the account of the two houses that night, they say on little cards— we have little cards that we trade with — that Mr. A., at one o’clock, sold to Mr. B. one thousand barrels of pork at $20, and at four o’clock purchased of him one thousand barrels of pork at $20.50, and consequently the party to whom the difference is due sends in his bill the following morning, and makes a collection of it, and that obviates all necessity for a contract. The contract is settled so far as they are concerned. I had an order to-day from Milwaukee to buy five hundred barrels of pork, seller’s option, February. I had at the same time an order from Cincinnati to sell five hundred barrels at the same price. Sometimes we do not execute both of these orders to the parties on the board. We simply let the orders stand as an offset to each other, after ascertaining the market. If the market is $20 a barrel one order offsets the other. One party buys and the other sells, and the accounts just pass through, but as far as possible we endeavor to make contracts with all these parties there.”
The question asked the witness was plain, direct, and simple. It went to the very foundation of the claim of his firm, *721 asserted in the action, and admitted of a ready and direct answer, and the character of answer made furnishes strong reason to believe that the witness could not truthfully answer that his firm had in fact executed the orders received from Krauth, Ferguson & Co., by making contracts as directed and as was their duty, and as they had reported that they had done.
But learned counsel contend, that the witness having stated generally that purchases were made, and that the property was sold, that should be deemed sufficient, and that there was no inquiry into details on cross-examination, or effort made to show that these general statements were untrue.
While the question we have just quoted can not be said to have called for details, it did call for a general answer of a very specific and direct character, and the answer demanded was not given there or elsewhere in the record. The witness must have known the facts inquired about, and must have known they were material to his case, and his failure to give them far outweighs his general statement, that purchases were actually made, and especially so as he stated in answer to that very question, that in the case supposed by him an order from one customer to sell and from another to buy, may be offset against each other, and that without any contract with a third person being made, there is a sale for one and a purchase for the other.
This indicates that the witness had no correct conception of the force of the words he used, or that the terms “ buy ” and “sell” have a widely different meaning in Chicago from that which belongs to them in this state. That this was not a mere inadvertence of the witness is shown by the fact that his attention was again called to the subject, and he answered in the same way.
He was asked as follows: “You have stated in the course of your deposition that when you would receive the same day *722 an order from one customer to sell, for future delivery, at a fixed price, and from another customer to buy, for future delivery, at the same price, that instead of making an actual purchase or an actual sale, that you just offset the two contracts against each other, have you not?” Answer: “Not exactly that; no sir; because there is an actual purchase and an actual sale made there.”
That such a transaction does not amount to either a purchase or sale is obvious, and that the witness understood that by the form of the transaction, as he describes it, there was an actual purchase and sale, proves that his general statement, that he made purchases and sales for Krauth, Ferguson & Co., however honestly made, is wholly unreliable. He understands that to be a purchase which is clearly not a purchase, and all he says may be true, as he understands it, and it may also be true that he did not, in any instance, make either an actual purchase or an actual sale for the account of Krauth, Ferguson & Co. That this conclusion is correct may be further shown by other, statements made by the -witness.
He said: “I would like to explain to you how we do business here in Chicago. The trading here is on a very large scale, and to facilitate business we make settlements in this way: You are residing in Louisville, and you send me an order to buy you one thousand barrels of pork. You do not warn it immediately, but you want it for January, for instance. I am your commission merchant, and I buy you one thousand barrels of pork, of the Chicago Packing and Provision Company, for instance, who are members of the board of trade, and who operate largely. I buy it at $20. I report the purchase to you, and I am responsible to you for the delivery of one thousand barrels of pork. It may be very likely that I had one thousand barrels of pork sold the Chicago Packing and Provision Company for somebody in Boston at $18 a barrel. I owe the Chicago Packing and Provision *723 Company pork at $18 a barrel, and they owe it to me at $20, to be delivered at seller’s option, during the month of January. To facilitate trade we do not wait until January comes-round for me to deliver the pork to the Chicago Packing and Provision Company, and the packing company to deliver it back to me again, but we settle it up. by paying the difference to the packing company of $2 a barrel. You will naturally ask, who are you going to get the pork from? Washington Butcher’s Sons owe you one thousand barrels of pork. They reported it bought for you, and they are responsible for it, but that pork is settled up by the sale made to the packing company for some other account.”
It is evident from these statements that the witness did not fully comprehend the statement made by him, that all these transactions were in the regular course of business, or that he did not mean to say, or to be understood as saying, that he in each instance made an actual contract with a third person for the purchase and sale of goods under orders from Krauth, Ferguson & Co., or, if he did, then his statement, that purchases and sales were made in each instance, ought to be understood only as intended to mean that the transactions were all what he understood to be purchases and sales. But when he gives the details of a transaction as consisting of the settlement of a purchase for one customer by surrendering or settling a sale made for another, or by offsetting the orders of two customers against each other, and calls that a purchase for one and a sale for the other, we can not know but when he said he made purchases and sales for Krauth, Ferguson & Co., in the regular course of business, he merely meant that he had purchased for them, and immediately canceled the contract by a settlement with the seller, or that he had made it by offsetting their orders for purchases against the orders of other customers to sell.
The illustrations given by him of the manner of doing *724 business in Chicago go very far to prove that such was his understanding.
His first illustration amounts to this: The appellants, when directed by their Boston customer to sell one thousand barrels of pork, sold it to the packing company at $18, making the contract with that company in their own name.
This was required by the rules of the board of trade, and was altogether proper. They reported to the Boston customer that they had sold his pork, and that contract, although made in the name of the appellants, being made for their customer, became, as between them and him, his contract.
When they received an order from their Louisville customer they went through the form of buying for him from the packing company to whom they had sold for the account of the Boston customer, and notified their Louisville customer that they had bought one thousand barrels of pork for him, and thereby made the contract of purchase his as between themselves and him. They then held two contracts, one of sale, which belonged to the Boston customer, and one of purchase, which belonged to the Louisville customer.
These contracts it was their duty to hold, each for the customer for whom it was made, until its maturity, or until directed by the customer to whom it belonged to dispose of it, or until by the usages of trade, or by the terms of the agreement between them and their customers respectively they had a right to dispose of it. They had no right to dispose of or settle either for their own account or on account of their dealings with or for another customer.
But they immediately proceed to settle and cancel both contracts, and the packing company, knowing nothing of the interest of appellants’ customers in them, was, of course, discharged from its obligations on them. This is all done long before the maturity of the contracts. When they mature if the Louisville customer calls for the delivery of the pork *725 bought for him, instead of finding in the hands of his brokers a contract made with a third person for his account, as he directed to be done, and such as it was the duty of his broker to make and hold for him, he finds his broker is alone liable to him for his purchase. In a word, he finds that practically he has been dealing with his broker, and not through him with a third person.
The second illustration discloses a course of dealing equally objectionable; and that these illustrations correctly represent the appellants’ course of dealing with Krauth, Ferguson & Co. is shown not only by the entire failure of the witness, though specially asked, to state that contracts were in each instance actually made with third persons for account of Krauth, Ferguson & Co., or to give the names of those with whom such contracts were made, but by the fact, repeatedly stated by him, that those who dealt with commission houses as Krauth, Ferguson & Co. did, could look to no one but their commission merchants for performance of their contracts.
This can not be true, unless they failed altogether to make contracts for account of their customers, or unless, having made such contracts, they settled or canceled them before maturity.
If their custom is, as is certainly their duty, when buying or selling for customers, to make contracts with third persons, and to hold these contracts until they mature, or until the customer directs them to be disposed of, or until, by the usages of trade, they are authorized to dispose of them for account of the customer, it can not be true that they are alone responsible to the customer.
If appellants, in fact, bought meat for Krauth, Ferguson & Co., for January delivery, for instance, and held the contract until January, and did nothing in the meantime to discharge the seller from the obligation of his contract, the seller would have been bound to deliver the meat, and the appel *726 lants would have been bound to receive it for Krauth, Ferguson & Co., and they would have had the obligation of the seller as an additional guaranty for the performance of the contract.
The statement that the customer can look to no one but his commission merchant for performance of contracts of purchase or sale, can only be true on the assumption that the commission merchant either failed to make contracts with third persons, or, having made them, subsequently discharged such third persons from the obligations of the contracts.
The appellants’ managing partner failed, as we have seen, when distinctly asked to state whether, when instructed by Krauth, Ferguson & Co. to buy for their account, the appellants went on the market and made contracts of purchase with third persons.
He gave two illustrations with a view*to show the mode of doing such business.
From one of these illustrations it appears that contracts are sometimes made and then immediately canceled. From the other it appears that at other times no contract is made at all. Whether the one or the other of these modes of dealing was adopted when dealing with or for Krauth, Ferguson & Co., or whether one was adopted in some instances and the other in others does not appear.
Krauth, Ferguson & Co., were no doubt acquainted with the regular and customary mode in which business was transacted on the Chicago Board of Trade. But there is nothing in the record sufficient to show that either of the modes adopted by the appellants was according to a custom of such duration and universality as to become binding upon their customers, or that either was in accordance with the rules of the Board of Trade.
The two methods of conducting business, as stated by Mr. Darlington, are stated generally, as “ the way we do business *727 here in Chicago,” and as “ the regular course of business,” but this is not sufficient to establish such anomalous methods as binding customs in view of which parties are to be presumed to have contracted.
We therefore conclude that the appellants failed to prove that they made purchases and sales for the account of Krauth, Ferguson & Co., such as they alleged, and therefore failed to show that they paid out any money for them on account of such purchases and sales, and the judgment dismissing their petition is affirmed.